## IN THE UNITED STATES DISTRICT COURT
## OF NEW MEXICO

| | | |
|---|---|---|
| **DENNIS MCNAIR** | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION No.** |
| | § | |
| **CHRISTINE WORMUTH,** | § | |
| **SECRETARY OF THE** | § | |
| **DEPARTMENT OF THE ARMY** | § | |
| **Defendant.** | § | |

# *COMPLAINT*

## *Introduction*

1.      This is a complaint for damages, declaratory and injunctive relief authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. 2000e et seq. ("Title VII").

2.      This lawsuit is brought to prevent Defendant, **CHRISTINE WORMUTH, SECRETARY OF THE DEPARTMENT OF THE ARMY**, pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. 2000e, et seq. ("Title VII"), from discriminating Plaintiff, DENNIS MCNAIR in regard to terms, conditions and  privileges of employment, and for damages, and other equitable relief for Plaintiff, DENNIS MCNAIR who has been discriminated against by Defendant on the basis of Race/National Origin (Black/African-American), and subject to retaliation and a Hostile Work Environment.

## *Jury Demand*

3.      A jury is hereby demanded.

## *Jurisdiction and Venue*

4.      This action is brought for a declaratory judgment, injunctive relief and compensatory damages, pursuant to 42 U.S.C. Section 1983, 20 U.S.C. Sections 1681-1688, 28 U.S.C. Sections

2201 and 2202.  This Court has jurisdiction to hear the Plaintiff's claims pursuant to 28 U.S.C. Sections 1331, 1343(3) and (4) 1337 and 42 U.S.C. 2000e-5(f) [Section 706(f)(s) and (3) and 704(a) of Title VII].

5.      Venue is proper in the United States District Courts of New Mexico pursuant to 28 U.S.C. Section 1391(b) as New Mexico is the State where the Defendant operates the **CHRISTINE WORMUTH, SECRETARY OF THE DEPARTMENT OF THE ARMY**, Plaintiff's employer. Furthermore, all actions complained of herein occurred within the State of New Mexico.

### *Parties*

6.      **DENNIS McNAIR** is a citizen of the United States and a resident of the Las Cruces, New Mexico.

7.      Plaintiff is employed by the Defendant, **CHRISTINE WORMUTH, SECRETARY OF THE DEPARTMENT OF THE ARMY**.  The Defendant maintains and administers records relevant to its employment practices.  Service of process may be made upon the United States Attorney for the States District Courts of New Mexico, and the United States Attorney General, Department of Justice, by registered or certified mail, pursuant to the Federal Rules of Civil Procedure (Rules 4(I)(1)(A), (B) & (C)).

8.      Defendant is an employer within the meaning of 42 U.S.C. 2000e, et seq., ("Title VII").

### *Exhaustion of Remedies*

9.      Plaintiff filed a formal complaint of discrimination.  Such filing was within at least 45 days of the last act of which she complained.  Plaintiff's formal complaint alleged denial of Plaintiff's rights, by Defendant, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq., as amended by the Civil Rights Act of 1991.  Specifically, DENNIS McNAIR alleges that he was discriminated by Defendant on the basis of Race/National Origin (African-American), and subject to

retaliation and a Hostile Work Environment.

10.     All conditions precedent to the filing of the lawsuit has been met.

*__Factual Allegations__*

11.     Plaintiff is an African American male.  Plaintiff worked as an Information Technology (IT) Specialist, GS-2210-09 from June 2012 to present, and was with the with Directorate of Emergency Services, White Sands Missile Range, Las Cruces, New Mexico from 2006.  His first-line supervisor at the time of the events that make up this Complaint was Mr. Richard Koehler and his second level supervisor was Mr. Jackie Cates.

12.     Mr. Richard Koehler first become aware of EEO activity when Plaintiff told him about being discriminated against in December 2012 and advised Koehler he would file a discrimination complaint if he did not give Plaintiff an updated position description.  Soon after this conversation, Cates also became aware of Plaintiff's EEO activity.

        __Issue 1__

13.     Plaintiff was discriminated against based on race and EEO activity by Mr. Richard Koehler since 2012, when Plaintiff was not given an updated job description. He was working under his former position description, which was a GS-2210-5. This was the position description Plaintiff held at White Sands prior to assuming a current position at DES. When Plaintiff assumed the DES position, he was kept on the same position description, and was changed to a GS09. Plaintiff asked Mr. Koehler to update Plaintiff's position description at least four times per year since 2012 to present.

14.     Since 2012, Mr. Keohler told Plaintiff that he was working on a current description, but then in January 2017, Mr. Keohler told Plaintiff that someone at CPAC told him it was not required. Mr. Keohler could not remember the CPAC's name.  Plaintiff should have a position description that

reflects his current duties, because his current position description has nothing to do with my duties.

15.     In Plaintiff's old position description, he was responsible for Network and installation of IT equipment. He was also supposed to do customer support and perform help desk type duties. Now, in his current position, he has to two contractors who perform the customer support and help desk type duties, and Plaintiff was hired to review their work for accuracy and offering them assistance, and because of these duties Plaintiff's current position description should reflect his current duties.  He also has to ensure Network security, oversee installation of new Network equipment, oversee the two contractors, and do quality checks of their work, and generally ensuring DES is operating IAW regulation.

16.     A change in duties would give Plaintiff a competitive edge for future mobility, because Plaintiff's duties would be reflected in his position description and Plaintiff would be certified to work on DES Network. Plaintiff  is the subject matter expert for Network matters in DES, and he  is not certified to work on IT Network; Plaintiff is not supposed to be touching it.

17.     Plaintiff should have minimum certifications as conditions of employment, such as "Security Plus" course as a very basic certification. These would allow Plaintiff to work on the IT Network when an issues arose.

18.     In a competitive field, Plaintiff needs his duties reflected in his current position description. Plaintiff does not have the authority to quality check the contractors because his position description should have minimum certifications as conditions of employment, such as Security Plus course as a very basic certification. If these courses were listed in Plaintiff's position description, then Plaintiff would be able to properly quality check the contractors because under the regulation anyone working on the Network must be certified. This is regulation is in the 22 series.   Plaintiff is the only employee who is an expert for DES IT Network matters.

19.     The Defendant issued Plaintiff a IT Telecommunications, GS-2210-09, position description, but the position description does not list Plaintiff's duties at all. It references police cars and radios. In order to be an IT Telecommunications Person, that person needs to be a reservist on Title 32 and Plaintiff informed Mr. Koehler of this.

20.     Plaintiff does not have a current position description and cannot agree to any position description because Plaintiff's duties are not listed.

21.     Mr. Koehler did discuss the matter with Mr. Medina, but he is not a deciding official.  Mr. Medina is an employee at IMD (Information Management Directorate) and, Mr. Medina's position description is totally different from what Plaintiff does for the Defendant. Mr. Medina has no role in the issuance of position descriptions. The regulation provides that Plaintiff required basic certifications to touch the Network, what is his current position but without a description.

22.     Plaintiff was discriminated against based on race and reprisal (April 2017 EEO complaint) when on July 21, 2017 he received a notice of liability for $300.00 as a result of a Financial Liability Investigation or Property Loss (FLIPL).

23.     Mr. Morrison is responsible as he started this FLIPL against Plaintiff, which there was no reason to assert the FLIPL should have never been initiated.  It was unwarranted.

24.     When a person leaves and another one comes on board, there is supposed to be a complete inventory conducted, but Plaintiff's predecessor departed his position without conducting any inventory. Mr. Morrison told Plaintiff the day the predecessor retired (Steve Livas) to go sign the hand receipt so Mr. Livas could leave, and Plaintiff complied. Less than a week later, on or about July 4, 2012, Plaintiff discovered there was property, including computers, printers, and radios. It was work thousands of dollars, missing when Plaintiff conducted the initial inventory.

25.     Plaintiff informed Chief Cates, and Mr. Morrison after Plaintiff conducted the initial

inventory.  Mr. Cates did not have a response, but Mr. Morrison met with Plaintiff and told Plaintiff he should not have signed for it. Plaintiff informed Mr. Morrison that he directed Plaintiff to, he denied it. In or around October 2012, the Property Book Officer, Ms. Sanchez, told Plaintiff that DES needed to sign off on Plaintiff's inventory to have the missing property removed from my hand-receipt. Plaintiff asked Mr. Morrison to do this, and he refused.

26.     In October 2013, Plaintiff sent him another inventory to sign off on and Plaintiff explained what was left, and what had been located, and he refused to sign the inventory and remove the items from the hand receipt. As a result, in 2014, Mr. Morrison initiated a FLIPL and found Plaintiff liable for $300,000 but was only charged $300.  Plaintiff was found liable for $300 in missing equipment, some of which Plaintiff did not have and some of which the Plaintiff did have, and it is documented that Plaintiff had it in the office, which included 6 car radios, handheld radios, four computers sitting in the office, but Plaintiff was still held accountable for.  The investigating officer for the FLIPL is now retired, but Plaintiff gave him these serial numbers and told him this property was in his office. The Garrison Commander made the final determination.

27.     The other property was given to other directorates by Mr. Morrison, such as a badging machine for making entry badges so people could get into the range. He gave it to the Security Directorate. Mr. Morrison said he gave a T.V. receiver back to housing, but this was on Plaintiff's hand receipt, and they deny having it and Plaintiff was held accountable for this. Then there were other items like 70 handheld radios that Plaintiff never saw. Plaintiff predecessor lost them.

28.     Mr. Morrison initiated this FLIPL, which resulted in Plaintiff held liable for property he knew Plaintiff never received, and for property he disposed of, and for property that was in Plaintiff's office.  Plaintiff was not responsible for the loss of any of the equipment listed in the FLIPL.  The equipment was spread out among two warehouses, but Plaintiff did not even learn of

one of the warehoused until December 2013 when a contractor showed Plaintiff and that eliminated 7 sheets of previously un-located inventory. The Defendant clearly did not have a hold on the equipment prior to Plaintiff taking the position. However, the Defendant clearly blamed Plaintiff for it.

**Issue 2**

29.     Plaintiff was discriminated against based on his race and EEO activity by Mr. Richard Koehler when since 2013, Plaintiff was not sent to training Plaintiff had requested.

30.     Plaintiff did attend a CICSO Networking class (2013) and a Wireless Class (Fall of 2014), which were refresher courses for people who were already certified, because someone did not show up, Plaintiff found out and took the initiative to sit in in their spot. No one approved Plaintiff to attend these classes and since Plaintiff is not certified in these areas, the training was of no benefit to Plaintiff.

31.     Plaintiff has requested training from 2012 to present. He submitted written training requests in 2012 to Donald Morrison and gave the written requests to Mr. Morrison's administrative person, Ms. Annita Montijo. However, she returned the requests back to Plaintiff and told him that Mr. Morrison refused to sign them. Plaintiff has made many requests, even the last course he requested a course at Ft McCoy, WI, "Networking Plus Class." This was supposed to take place in September of 2014, and Plaintiff submitted the request to Mr. Koehler through Army Training Requirements and Resource System (ATARS) but did not act on Plaintiff's request. Plaintiff also has submitted requests to go to A+, Security Plus, and Network Plus courses multiple over the years, however, he cannot recall the dates at this point, or to whom he sent the requests. All he remembers is that not one request was granted. Mr. Koehler never approved any training. Over the years, Mr. Koehler would say that there was no money for training even though IT training is mandatory, like medical

training. Mr. Morrison also informed Plaintiff that that he would not send Plaintiff to any training and that he would not approve any training.

32.     Plaintiff has always reiterated to Mr. Morrison and Mr. Koehler about his need for training over the years. Plaintiff has always been aware that these certifications are required for him to access the Network and all of his current duties include installing switches, troubleshooting switches, and troubleshooting computers. The duties require Plaintiff to access the Network and without certification he is not allowed to access the Network under the regulation. The contractors Plaintiff supervised had these certifications, but Plaintiff did not.  Plaintiff is the only IT personnel that needs the training he requested.

33.     Plaintiff was discriminated against based on your race and EEO activity when from July 17-18, 2017, Plaintiff was suspended from work via a Notice of Proposed Suspension issued by Mr. Cates for two (2) days without pay and returned to work on July 19, 2017.

34.     The notice was issued on May 23, 2017, charging Plaintiff with discourteous behavior in the workplace because Plaintiff allegedly cursed at Chief Cates.  However, Plaintiff did not curse at Chief Cates.  Should this had actually taken place, Chief Cates would have had Police Officers remove Plaintiff from his office.

35.     On May 2, 2017, Chief Cates called an impromptu meeting with Plaintiff and Deputy Chief of Police Major Armando Quintana, which Chief Cates told Plaintiff he was recommending a Notice of Suspension for not cooperating during the FLIPL process. Plaintiff told him that Plaintiff had no control over the FLIPL. Plaintiff left the office, but Plaintiff did not rant or cuss for 15 minutes. There would have been coworkers that would have heard the "rant."  Chief Cates was sitting wearing his side arm which was a terroristic threat, and it was threatening to Plaintiff.  Plaintiff felt this was a hostile environment and left right away.

36.     Plaintiff discussed the proposed suspension with Mr. Morrison, and told Plaintiff that management wanted to suspend Plaintiff for five days, but he reduced it to two days. Ms. Audrey Carter was a witness.

37.     Plaintiff is not aware of any other employee being suspended by Mr. Morrison.  Prior to the suspension Plaintiff has never had any disciplinary actions in the past or counseled or warned that actions he took could result in a disciplinary action taken against him.

38.     No matter what how good a job performance Plaintiff accomplished it was met with distain. Mr. Koehler should have been part of the suspension meeting and not the major.  Mr. Koehler's should have been part of the initial meeting Plaintiff and with Mr. Cates.  It could have had a different outcome.

39.     Plaintiff was the only male African American going through this hostility. Plaintiff was the only one suffering discrimination, retaliation and a hostile work environment.

**Issue 3**

40.     Plaintiff was discriminated against based on his race and EEO activity when on February 02, 2017, Plaintiff discovered that equipment he is responsible for and that was on his hand receipt was moved by Mr. Jose Vargas-Rodriguez without Plaintiff's knowledge.

41.     There was a printer that needed replacing in the Detox center and the employee, Mr. Sean Ryan, told Plaintiff that Mr. Vargas moved it (the replacement printer) to the warehouse. Both printers were there waiting for Plaintiff at the detox center for Plaintiff to get the replacement. This was in November 2016. In response, Plaintiff informed Mr. Vargas not to move equipment and Mr. Kohler not to move equipment, via email. Yet, it happened at least five more times. Mr. Vargas moved printers out of building 1417, around November 2016. Mr. Vargas moved computers from building 1417 around November 2016. Mr. Vargas then moved a printer our of police records around

December 2016. He moved all of this equipment to the warehouse. This was after Plaintiff asked him not to move the equipment. Plaintiff told him that there was a FLIPL investigation against Plaintiff, and Plaintiff needed to approve the relocation of any IT equipment for which Plaintiff was responsible.

42.     The equipment was placed in the warehouse under lock and key, and Plaintiff does not have access to the warehouse without Mr. Vargas. If there was to be an IT failure in the middle of the night, Plaintiff would have no-way to repair the problem without the equipment needed, and he would be held accountable for not having the equipment on hand that he is responsible for.

43.     Mr. Vargas has only seemed to move Plaintiff's equipment. Mr. Vargas did not allow for Plaintiff to have access to the equipment for IT repairs, this was even after Plaintiff asked Mr. Vargas not to move the equipment, but Mr. Vargas was under orders to move the equipment regardless of Plaintiff asking Mr. Vargas not to. This created tension in the work place.

        **Issue 4**

44.     Plaintiff was discriminated against based on his race and EEO activity when Mr. Morrison did not include Plaintiff in meetings in which critical decisions were being made that affected the way Plaintiff conducted business. These were Migration Meetings for the Network. These in person meetings took place from mid-2015 until present by IMD personnel out of Ft. Bliss TX announced the physical meetings.

45.     Plaintiff had informed Mr. Koehler that he wanted to be part of the meetings and Mr. Koehler told Plaintiff he would let know when the meetings were happening, but he never did.

46.     However, the physical meetings no longer occur, but they occurred once a month, for about a year in 2016. No one on Plaintiff's team was welcome, including the two contractors: Steve Castaneda (Hispanic; no prior EEO activity), Fabian Rodriguez (Hispanic; no prior EEO activity).

At a physical meeting in December 2016, Plaintiff recalls coworkers going to the meetings.

47.     These are meetings in which decisions are made concerning IT matters and Plaintiff should have been included. Outside contractors come in and work on the Network without Plaintiff's prior knowledge, and then it results in partial failure of the Network, which Plaintiff is responsible for. This happened around in the summer of 2016. If Plaintiff would have been included in the physical meeting's he would have made preparations for the outside contractors.

### Issue 5

48.     Plaintiff was discriminated against when on December 16, 2016, his appraisal for performance evaluation rating period November l, 2015, to October 31, 2016, handled Mr. Cates was submitted without Plaintiff's signature.

49.     Plaintiff's rating states that he refused to sign the support form, the DA Form 7222-1 (the support form / employee inputs), when in fact, Plaintiff submitted the form to Mr. Koehler in October 2016. Mr. Koehler emails the support form, Plaintiff filled it out, signed and sent it back to Mr. Koehler.  This was the process Plaintiff always followed and there was never an issue.

50.     Plaintiff had advised Mr. Koehler that he signed it and sent it to him.  This matter worried Plaintiff because it paints him in a negative light, and he did send the signed form to Mr. Koehler, but he did not acknowledge.

### Issue 6

51.     Plaintiff was discriminated against based on his race and EEO activity when Mr. Koehler constantly requested an inventory of Plaintiff's equipment when an investigation was still going on regarding that equipment.

52.     The investigation referred to a FLIPL investigation which was initiated in March 2014 and concluded in in July 2017.  Mr. Koehler asked Plaintiff for this probably about 20 times, in total,

from around 2014 through 2015. He asked Plaintiff for a full inventory of Plaintiff's hand-receipted property monthly, and Plaintiff complied. Plaintiff would have to physically locate all of the equipment on the hand-receipt. This is a lot of equipment, about $500,000 worth of equipment. The inventory would take Plaintiff about a full day or day and a half to complete.

53.      However, Plaintiff is only required to do a full inventory annually. There is no requirement to do one monthly, but the organization does a 10% inventory every month, which is not a problem. The problem here was that Mr. Koehler was making Plaintiff do a full inventory every month.

54.      Plaintiff spoke to Koehler about these monthly inventories every time he asked Plaintiff to perform.  Plaintiff told him about the same paperwork in his computer was still valid. There was no reason to do another inventory, and this was merely harassment.

55.      Plaintiff had to do unnecessary work and Mr. Vargas was sent to escort Plaintiff on these inventories as if Plaintiff was not to be trusted.

56.      Plaintiff has suffered emotionally and physically due to the harassment employed with Defendant and particularly under Chief Cates and Mr. Morrison.

57.      Plaintiff is the only male African American employee, and he is not treated the same as all other employees (the Police Officers). No one else faces the problems Plaintiff has faced.

## *COUNT ONE*
### *TITLE VII VIOLATION – RACE/NATIONAL ORIGIN (BLACK/AFRICAN-AMERICAN)*

58.      The Plaintiff re alleges paragraphs 1 - 57 as if fully set forth herein.

59.      Defendant discriminated against Plaintiff herein since the agents and employees of Defendant engaged in discrimination based on Race in violation of Title VII of the Civil Rights Act. Specifically, the Plaintiff suffered adverse employment consequences as a direct result of

Race/National Origin (Black/African-American). As a direct and proximate result of these actions, Plaintiff suffered Race/National Origin (Black/African-American) discrimination harassment.

60.     By reason of the Defendant's actions, the Plaintiff found it necessary to retain the services of an attorney in these proceedings and heretofore and is therefore entitled to attorneys' fees pursuant to Title VII and under the general equity Powers of the Court.

## COUNT TWO
### HOSTILE WORK ENVIRONMENT

61.     Plaintiff realleges paragraphs 1 - 60 as if fully set forth herein.

62.     The actions of Defendant constituted a hostile work environment against Plaintiff, in the creation and condonation of a hostile work atmosphere which changed the terms and conditions of his employment.

63.     The unlawful employment practices in violation of the Civil Rights Act herein complained of, occurred in the course of Plaintiff's employment with Defendant, were carried on by Defendant's agents, servants, and employees and committed because of Plaintiff's Race/National Origin (Black/African-American) made the work environment one that a reasonable person could not endure without injury.

64.     Defendant discriminated and retaliated against Plaintiff herein as an African-American with respect to the terms, conditions, privileges, advantages and benefits of his employment with Defendant. Specifically, Plaintiff was harassed, held to stricter standards of performance, and denied benefits of employment accorded other employees.

65.     In addition, Plaintiff was treated dissimilarly from other employees.

66.     By reason of the Defendant's actions, the Plaintiff found it necessary to retain the services of an attorney in these proceedings heretofore and is therefore entitled to attorney's fees pursuant to the

Title VII, and under the General Equity Powers of the Court.

### COUNT THREE
### REPRISAL/RETALIATION

67.     The Plaintiff re-alleges paragraphs 1 - 66 as if fully set forth herein.

68.     Defendant retaliated against Plaintiff, herein since it engaged in reprisal and retaliation in violation of Title VII of the Civil Rights Act.  Specifically, Plaintiff suffered adverse employment consequences as a direct result of his participation or assistance in prior EEOC process.  As a direct and proximate result of these actions, Plaintiff suffered retaliation and reprisal.

69.     By reason of the Defendant's actions, Plaintiff found it necessary to retain the services of an attorney in these proceedings and heretofore and is therefore entitled to attorney's fees pursuant to Title VII, and under the General Equity Powers of the Court.

WHEREFORE, Plaintiff respectfully requests:

a.      A declaratory judgment, declaring Defendant's acts, through the acts of its agents, employees and successors, herein complained of to be in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. 2000e, et seq. ("Title VII");

b.      Compensatory damages against the Defendant for each violation of Plaintiff's rights, as protected by Title VII and, for pain, suffering, emotional distress, humiliation and for any resulting physical and emotional damages, in the amount of $300,000.00;

c.      Attorney's fees, court costs, prejudgment and post judgment interest as provided by law including Title VII; and

d.      Such other and further relief to which Plaintiff may be entitled.

Respectfully submitted,


/s/ Jonathan H. Huerta
Jonathan H. Huerta
NM State Bar No. 24715
11601 Pelicano Drive
El Paso, Texas 79936
Tel:  (915) 629-9988
*elopezlawfirm@yahoo.com*
*jonathan915law@yahoo.com*