# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

DENNIS MCNAIR,

    Plaintiff,

v.                                            Civ. No. 2:21-cv-00614 MIS/GJF

CHRISTINE WORMUTH, SECRETARY
OF THE DEPARTMENT OF THE ARMY,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant's Motion to Dismiss. ECF No. 6. Plaintiff filed a Response, and Defendant filed a Reply. ECF Nos. 14, 16. Having considered the parties' submissions, the Complaint, and the relevant law, the Court will grant the Motion in part, dismiss Counts I and II of the Complaint without prejudice, and allow Plaintiff 30 days to file a first amended complaint.

## BACKGROUND

On July 2, 2021, Plaintiff, an Information Technology ("IT") Specialist at U.S. Army White Sands Missile Range, New Mexico,[1] filed his Complaint against the Secretary of the Army in her official capacity as Plaintiff's employer, alleging violations of Title VII of the Civil Rights Act of 1964. ECF No. 1. Specifically, Plaintiff alleges that since 2012, Defendant has discriminated against him in the terms and conditions of his employment based on his race/national origin (Black/African American) (Count I); has created a hostile work environment that altered the terms and conditions of his employment based on his

---

[1] *See* ECF No. 1, ¶ 11.

race/national origin (Black/African American) (Count II); and has taken adverse employment action against him based on retaliation (Count III). *Id.*

In the present Motion, Defendant asks the Court to dismiss Plaintiff's Complaint in its entirety under Fed. R. Civ. P. 12(b)(6) (failure to state a claim), based on Plaintiff's failure to meet the pleading standard set forth in Tenth Circuit precedent, including *Khalik v. United Air Lines*, 671 F.3d 1188, 1190–91 (10th Cir. 2012) (applying *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (*"Twombly"*) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (*"Iqbal"*)).

## LEGAL STANDARD

Pursuant to Rule 12(b)(6), a party may move for dismissal if the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). This pleading standard does not impose a probability requirement, but it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. Although a court must accept the truth of all properly alleged facts and draw all reasonable inferences in the plaintiff's favor, the plaintiff still "must nudge the claim across the line from conceivable or speculative to plausible." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).

"A complaint raising a claim of discrimination does not need to conclusively establish a prima facie case of discrimination, but it must contain more than '[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Bekkem v. Wilkie*, 915 F.3d 1258, 1274 (10th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). While a plaintiff is not required to plead any specific facts in particular, "a plaintiff must include enough context and detail to link the allegedly adverse employment action to a discriminatory or retaliatory motive with something besides sheer speculation." *Id.* at 1274–75. "A plaintiff should have—and must plead—at least some relevant information to make the claims plausible on their face." *Id.* at 1275. "Pleadings that do not allow for at least a reasonable inference of the legally relevant facts are insufficient." *Id.* (quoting *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013)).

## DISCUSSION

### A. Plaintiff does not allege plausible facts supporting his disparate treatment discrimination claim (Count I).

In Count I, Plaintiff fails to state a claim for relief under the *Twombly/Iqbal* standard. Specifically, Plaintiff has failed to allege facts plausibly showing that he suffered an adverse employment action based on race or national origin under Title VII.

While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in his Complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim. *See Khalik*, 671 F.3d at 1192. Title VII makes it unlawful "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Id.*

3

(citing 42 U.S.C. § 2000e-2(a)(1)).[2] "To establish a prima facie disparate treatment claim, a plaintiff must present evidence that (1) [he] belongs to a protected class; (2) [he] suffered an adverse employment action; and (3) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011). A plaintiff can establish the third prong by showing, for instance, that similarly situated employees not in the same protected class were treated differently. *See, e.g., Ibrahim v. All. for Sustainable Energy, LLC*, 994 F.3d 1193, 1196 (10th Cir. 2021); *E.E.O.C. v. Flasher Co.*, 986 F.2d 1312, 1316 (10th Cir. 1992).

Although Plaintiff states generally that he suffered discrimination based on his race due to several different workplace actions taken against him since 2012, and although Plaintiff states throughout his Complaint that he suffered race discrimination, he fails to allege sufficient facts tending to show that *because* of his race, Defendant discriminated against him in the terms and conditions of his employment. "In any employment-discrimination case, the ultimate issue and 'central focus of the inquiry . . . is always whether the employer is treating some people less favorably than others *because of* their race, color, religion, sex, or national origin.'" *Morman v. Campbell Cnty. Mem. Hosp.*, 632 F. App'x 927, 934 (10th Cir. 2015) (emphasis added) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)).

The specific facts offered by Plaintiff regarding race discrimination based on disparate treatment are as follows:

---

[2] "A plaintiff proves a violation of Title VII either by direct evidence of discrimination or by following the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, [411 U.S. 792 (1973)]." *Khalik*, 671 F.3d at 1192. In this case, Plaintiff has not alleged direct evidence of discrimination.

- "Plaintiff is not aware of any other employee being suspended by Mr. [Donald] Morrison." ECF No. 1, ¶ 37.[3]
- "Plaintiff was the only male African American going through this hostility. Plaintiff was the only one suffering discrimination, retaliation and a hostile work environment." *Id.*, ¶ 39.
- "No one on Plaintiff's team was welcome [at network migration meetings], including the two contractors: [Employee 1] (Hispanic; no prior EEO activity), [Employee 2] (Hispanic; no prior EEO activity). At a physical meeting in December 2016, Plaintiff recalls coworkers going to the meetings" *Id.*, ¶ 46.
- "Plaintiff is the only male African American employee, and he is not treated the same as all other employees (the Police Officers). No one else faces the problems Plaintiff has faced." *Id.*, ¶ 57.
- ". . . Plaintiff was harassed, held to stricter standards of performance, and denied benefits of employment accorded other employees." *Id.*, ¶ 64.
- ". . . Plaintiff was treated dissimilarly from other employees." *Id.*, ¶ 65.

The above facts and legal conclusions are insufficient to state a claim for relief under Title VII. Plaintiff alleges that he was treated differently from other employees, but he provides very little context to establish how or why he was treated differently. Essentially, the current Complaint requires the Court to speculate regarding the difference between Plaintiff's treatment and the treatment of other employees based on race. The Complaint

---

[3] Plaintiff does not fully explain who "Mr. Morrison" is, but based on context, it appears that he is a higher-level employee exercising some degree of supervisory authority over Plaintiff.

is unclear as to whether there were *any* similarly situated employees, much less ones that were treated differently from Plaintiff on the basis of race or national origin.[4] [5] The Complaint does not provide sufficient context or detail to link the alleged adverse employment actions to a discriminatory motive, and any connection the Court draws would be "sheer speculation." *See Bekkem*, 915 F.3d at 1274–75. Therefore, the Court must dismiss Count I of the Complaint.

### B. Plaintiff does not allege plausible facts supporting his hostile work environment claim (Count II).

In Count II, Plaintiff fails to state a claim for relief under the *Twombly/Iqbal* standard. Specifically, Plaintiff has failed to allege facts showing that he suffered a hostile work environment based on race or national origin under Title VII.[6]

Similarly to Section A above, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim. *See Khalik*, 671 F.3d at 1192.

---

[4] For instance, given that Plaintiff states he is an "Information Technology (IT) Specialist," ECF No. 1, ¶ 11, and given a lack of sufficient facts providing context, the Court cannot reasonably infer that he is similarly situated to "the Police Officers" referenced in the Complaint.

[5] In general, "[a]n employee is similarly situated to the plaintiff if the employee deals with the same supervisor and is subject to the same standards governing performance evaluation and discipline." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000). In the context of discipline, "[e]mployees who are similarly situated must have been disciplined for conduct of comparable seriousness in order for their disparate treatment to be relevant." *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 541 (10th Cir. 2014) (quoting *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006)). The Tenth Circuit has recognized that the standard may vary based on the circumstances of a particular case. *See, e.g., Smothers*, 740 F.3d at 537 (case involving multiple decisionmakers); *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007) (prima facie case varies depending on the type of adverse action).

[6] Although Plaintiff uses the word "retaliated" once in the "Hostile Work Environment" section, Count II of the Complaint (ECF No. 1 at 13), he does not allege facts supporting a claim for hostile work environment based on retaliation. He alleges that Defendant "discriminated and retaliated against Plaintiff herein as an African-American," (ECF No. 1, ¶ 64), rather than on the basis of any protected oppositional activity. *See Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008) (plaintiff claiming retaliation must show that he "engaged in protected opposition to discrimination"). Also, in Plaintiff's Response (ECF No. 14), he does not argue hostile work environment based on retaliation. Therefore, the Court assumes that Plaintiff did not intend to assert a claim for hostile work environment based on retaliation. To the extent that he did intend to assert such a claim, it is dismissed without prejudice for failure to state a claim.

"The focus of the inquiry in a hostile work environment claim, as the name suggests, is on whether 'the workplace is permeated with discriminatory intimidation, ridicule, and insult.'" *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1073 (10th Cir. 1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The elements of a racially hostile work environment claim are that: "(1) the plaintiff is a member of a protected group; (2) the plaintiff was subjected to unwelcome harassment; (3) the harassment was based on the protected characteristic (in this case, race); and (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of the plaintiff's employment and created an abusive working environment."[7] *Asebedo v. Kan. State Univ.*, 559 F. App'x 668, 670 (10th Cir. 2014) (citing *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1262–63 (10th Cir. 2005)).

Although Plaintiff states instances in which he was intimidated or harassed in the workplace (*see* ECF No. 1, ¶ 35 (Chief Cates "was sitting wearing his side arm which was a terroristic threat, and which was threatening to Plaintiff"); *id.*, ¶¶ 53–56 (Plaintiff was asked to do inventories every month, rather than once a year, out of harassment); *id.*, ¶ 64 ("Plaintiff was harassed, held to stricter standards of performance, and denied benefits of employment accorded other employees")), nowhere in Plaintiff's Complaint does he allege facts permitting a reasonable inference that a hostile work environment was

---

[7] *See, e.g., Brown v. LaFerry's LP Gas Co.*, 708 F. App'x 518, 522 (10th Cir. 2017) (setting forth some examples of conduct constituting hostile work environment, including a "steady barrage of opprobrious racial comments" or extremely serious actions amounting to "discriminatory changes in the terms and conditions of employment") (citing *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998); *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007)). Even if Plaintiff has met this standard (which the Court does not decide), he nevertheless has failed to allege facts showing a causal connection between his claim of hostile work environment and race, national origin, or retaliation.

imposed upon him *because* of his race or national origin. Instead, Plaintiff makes conclusory allegations, including that "[t]he actions of Defendant constituted a hostile work environment" (ECF No. 1, ¶ 62) or that "the Police Officers" were treated differently based on race (*Id.*, ¶ 57; *supra* n.4), without alleging sufficient facts to state a claim for hostile work environment based on any protected status. These formulaic recitations and conclusory statements, standing alone, are insufficient to meet the standards set forth in *Twombly/Iqbal*. Therefore, the Court must dismiss Count II of the Complaint.

### C. Plaintiff's allegation of temporal proximity between his April 2017 EEO complaint and the May 2017 Notice of Proposed Suspension is sufficient to state a claim for retaliation (Count III).

Although the bulk of Plaintiff's facts do not support a claim for retaliation, Plaintiff's single allegation of temporal proximity between his April 2017 EEO complaint and the May 2017 Notice of Proposed Suspension is sufficient to state a claim for relief under the *Twombly/Iqbal* standard.[8]

Again, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim. *See Khalik*, 671 F.3d at 1192. In order to establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) he engaged

---

[8] The third claim survives based on temporal proximity between the April 2017 EEO complaint and alleged adverse action beginning in May 2017. At this time, it appears that any retaliation stemming from Plaintiff's December 2012 threat to file an EEO complaint does not survive. Plaintiff has not alleged facts showing a reasonable good-faith belief that Defendant's conduct violated Title VII. *See Crumpacker v. Kan. Dep't of Human Res.*, 338 F.3d 1163, 1171 (10th Cir. 2003). The date(s) of the initial discrimination in 2012 relative to retaliation are unclear. *See* ECF No. 1, ¶ 12–14 (stating that in December 2012, Plaintiff "advised [Mr.] Koehler that he would file a discrimination complaint if he did not give Plaintiff an updated job description" but failing to state the month when the discrimination began). Further, Plaintiff has not alleged facts showing it is plausible that Mr. Koehler's failure to update his job description was an adverse employment action. *See Aquilino v. Univ. of Kan.*, 268 F.3d 930, 936 (10th Cir. 2001) (speculative harm to future employment prospects does not constitute adverse employment action). Finally, Plaintiff's allegation that he suffered retaliation (i.e., failure to update his job description) beginning in December 2012 for complaining about Defendant's failure to update his job description is a circular argument that does not appear entirely plausible, absent additional facts showing discriminatory or retaliatory intent.

in protected opposition to discrimination; (2) a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection existed between the protected activity and the materially adverse action. *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008).

Aside from conclusory allegations, the facts Plaintiff offers in support of his claims of retaliation are as follows:

- Plaintiff's first-level supervisor, Mr. [Richard] Koehler, became aware of Plaintiff's "EEO activity when Plaintiff told him about being discriminated against in 2012 and advised [Mr.] Koehler he would file a discrimination complaint if he did not give Plaintiff an updated position description," and Plaintiff's second-level supervisor, the Chief of Police, Mr. Jackie Cates, became aware of Plaintiff's EEO activity shortly thereafter. ECF No. 1, ¶ 12.

- From 2012 to the present, Plaintiff has asked Mr. Koehler to update his job description, but Mr. Koehler has not done so, based on Plaintiff's prior EEO activity. *Id.*, ¶¶ 13–21.

- On July 21, 2017, Plaintiff "received a notice of liability for $300.00 as a result of a Financial Liability Investigation or Property Loss (FLIPL)" for property Plaintiff took possession of in 2012, based on "reprisal (April 2017 EEO complaint)." *Id.*, ¶ 22. The FLIPL investigation was initiated by Mr. Morrison in 2014. *Id.*, ¶ 26. Plaintiff alleges that in 2012 he was forced to sign off on equipment that he never had possession of, and that his supervisor refused to allow him to remove the equipment from his hand receipt. *Id.*, ¶¶ 25–28. Plaintiff further alleges that the FLIPL investigation

9

"was unwarranted" (*id.*, ¶ 23) and that Mr. Koehler "refused" to have the missing property removed from his hand receipt in or around October 2012. The "Garrison Commander made the final determination" on the FLIPL investigation. *Id.*, ¶ 26.[9]

- Plaintiff has not been sent to training he has requested since 2012 or 2013,[10] based on his EEO activity, despite multiple requests, which Plaintiff's supervisors have consistently denied. *Id.*, ¶¶ 29–32. As a result, Plaintiff has not been able to access the network in order to perform the duties of his position. *Id.*, ¶ 32. Contractors had these certifications, but Plaintiff did not. *Id.*

- Plaintiff was "suspended from work via a Notice of Proposed Suspension issued by [Chief] Cates for two (2) days without pay." *Id.*, ¶ 33. The notice was issued on May 23, 2017, "charging Plaintiff with discourteous behavior in the workplace because Plaintiff allegedly cursed at Chief Cates," even though Plaintiff did not actually do so. *Id.*, ¶ 34. Chief Cates told Plaintiff that "he was recommending a Notice of Suspension for not cooperating during the FLIPL [investigation] process." *Id.*, ¶ 35. Plaintiff was threatened due to Chief Cates wearing his service weapon, and Plaintiff "felt that this was a

---

[9] Plaintiff has failed to allege how or why the Garrison Commander was involved in the retaliation, other than stating that the Garrison Commander made the final determination. If the Garrison Commander made the final determination, as Plaintiff claims, then this would leave the Court to speculate as to how Plaintiff's supervisors, Koehler and Cates (and perhaps Morrison), were involved in the retaliation. Regardless, other than one issue regarding temporal proximity, Plaintiff has not alleged facts showing that it is plausible that any of these individuals had any retaliatory motives.

[10] Plaintiff's Complaint is unclear as to whether the alleged refusal to send Plaintiff to training began in 2012 or 2013. *See* ECF No. 1, ¶¶ 29, 31.

hostile environment and left right away." *Id.* "Plaintiff is not aware of any other employee being suspended by Mr. Morrison," and prior to the suspension, Plaintiff was never disciplined, warned, or counseled. *Id.*, ¶¶ 36–37. "Mr. Koehler should have been part of the suspension meeting and not [the Deputy Chief, Major Armando Quintana]." *Id.*, ¶ 38. "Mr. Koehler[] should have been part of the initial meeting [between Plaintiff] and . . . [Chief] Cates. It could have had a different outcome." *Id.*, ¶ 38.

- "No matter how good a job performance Plaintiff accomplished it was met with [disdain]." *Id.*, ¶ 38.

- On February 2, 2017, "Plaintiff discovered that equipment he is responsible for and that was on his hand receipt was moved by [another employee] without Plaintiff's knowledge," resulting in "tension in the workplace." *Id.*, ¶¶ 40–43. Plaintiff could have been held accountable for the other employee's actions. *Id.*, ¶ 43. (There is no allegation that Plaintiff was actually disciplined or otherwise "held accountable" for the other employee's actions.)

- From "mid-2015 until present," Plaintiff was excluded from network migration meetings in which he should have been included, given the impact of the meetings on his performance. *Id.*, ¶¶ 44, 47. "No one on Plaintiff's team was welcome," including two Hispanic contractors with "no prior EEO activity." *Id.*, ¶ 46. However, some of Plaintiff's coworkers went to a meeting in December 2016. *Id.*

- Plaintiff's performance evaluation for 2015–2016 was submitted "without Plaintiff's signature," which paints Plaintiff in a negative light. *Id.*, ¶¶ 48–50.

- Plaintiff was discriminated against based on "EEO activity when Mr. Koehler constantly requested an inventory of Plaintiff's equipment when an investigation was still going on regarding that equipment." *Id.*, ¶¶ 51–57.

- ". . . Plaintiff was harassed, held to stricter standards of performance, and denied benefits of employment accorded other employees." *Id.*, ¶ 64.

- ". . . Plaintiff was treated dissimilarly from other employees." *Id.*, ¶ 65.

For the same reasons stated in Sections A and B,[11] most of the above allegations do not meet the standards set forth in *Twombly/Iqbal*. Likewise, Plaintiff's allegation of temporal proximity (i.e., approximately 5 years) between his threat of filing a 2012 EEO complaint and the allegedly adverse actions on which he based his 2017 EEO complaint is insufficient to state a claim for relief under Title VII on its own.[12]

However, the temporal proximity between Plaintiff's April 2017 EEO complaint and the adverse action he suffered beginning in May 2017 *is* sufficient to state a claim for relief on its own.[13] Although temporal proximity between protected activity and adverse action alone may establish an inference of retaliatory motive in some cases, there must

---

[11] *See also supra* n.9.

[12] *See Conroy v. Vilsack*, 707 F.3d 1163, 1181–82 (10th Cir. 2013).

[13] Although Defendant argued in the Response (ECF No. 6 at 20) that the date of the actual disciplinary action in July 2017 was insufficient to establish temporal proximity following the April 2017 EEO complaint, Plaintiff's Complaint alleges that the disciplinary action was proposed in May 2017 (ECF No. 1, ¶ 34). The date of proposed disciplinary action may be relevant to show close temporal proximity. *See, e.g., Muneta v. Leavitt*, No. Civ. 03-1102 RB/RHS, 2006 WL 8444281, at *2 n.4, *8 (D.N.M. Apr. 7, 2006) (recognizing date of proposed suspension as relevant to analysis of whether adverse employment action occurred).

be a very close temporal proximity between the protected activity and the adverse action. *See, e.g., Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239–40 (10th Cir. 2004) (temporal proximity between verdict rendered in March 2000 with post-trial motions continuing into June 2000, and university's decision not to interview and hire plaintiff in May 2000 and June 2000 respectively, sufficed to demonstrate causation for the purpose of establishing a prima facie case); *Conroy v. Vilsack*, 707 F.3d 1163, 1181–82 (10th Cir. 2013) (recognizing that temporal proximity of one and a half months may establish causation on its own, while three months likely will not). Here, Plaintiff claims that a Notice of Proposed Suspension was issued on May 23, 2017, approximately one month after he filed his EEO complaint on April 14, 2017. *See* ECF No. 1, ¶ 34; ECF No. 6-1 at 2; *infra* § D. Therefore, under Tenth Circuit precedent, Plaintiff has stated a plausible claim for relief based on temporal proximity alone. Because of the very close temporal proximity between his April 2017 EEO complaint and the May 2017 Notice of Proposed Suspension, the Court cannot dismiss Count III of the Complaint for failure to state a claim.[14]

### D. The Court declines to consider matters outside the pleadings.

In his Response (ECF No. 14 at 15–20), Plaintiff has stated several facts that are not contained in the Complaint (ECF No. 1). Plaintiff has not made a minimal showing as to how these facts are pertinent to the Motion, nor has Plaintiff explained why these facts are not alleged in the Complaint. The Court may exclude matters outside the pleadings

---

[14] Defendant does not dispute that a two-day suspension may constitute an adverse employment action. ECF No. 6 at 12 ("Defendant does not dispute that . . . suspension without pay [was an adverse employment action]."). For purposes of the Motion, the Court agrees. *See, e.g., Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1104 (10th Cir. 1998) ("Actions such as suspensions or terminations are by their nature adverse, even if subsequently withdrawn.").

pursuant to Fed. R. Civ. P. 12(d). *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (generally, the sufficiency of a complaint must rest on its contents alone, absent a few limited exceptions, including (1) documents incorporated by reference, (2) undisputed documents referred to in the complaint that are central to plaintiff's claim, and (3) matters of which a court may take judicial notice). Plaintiff has not argued that any of the above exceptions apply, and the Court does not find that any of these exceptions apply. Therefore, the Court declines to consider these additional facts.

### E.  Plaintiff shall have 30 days to file a first amended complaint.

In his Response, citing Fifth Circuit precedent, Plaintiff argues that he should be given "at least one chance to amend the [C]omplaint under Rule 15(a)" before the action is dismissed with prejudice. ECF No. 14 at 13. Although Plaintiff's request fails to comply with several rules, including Fed. R. Civ. P. 15 and D.N.M.LR-Civ. 15.1, and although Fifth Circuit precedent is not controlling in the Tenth Circuit, the Court will dismiss Counts I and II without prejudice and allow Plaintiff one opportunity to file a first amended complaint, within 30 days of the date of this Order.[15]

---

[15] Plaintiff is advised to follow the Rules of Civil Procedure, as well as the pleading standard set forth in *Twombly/Iqbal*, in the future. No further amendments will be permitted absent good cause, and the Court may dismiss a claim (or the entire action) with prejudice if Plaintiff fails to meet the federal pleading standard in a future amended complaint.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 6) is hereby **GRANTED IN PART** and **DENIED IN PART**. Counts I and II of Plaintiff's Complaint (ECF No. 1) are dismissed without prejudice. Count III shall not be dismissed.

**IT IS FURTHER ORDERED** that Plaintiff shall have **30 DAYS** from the date of this Order to file an amended complaint. If Plaintiff does not file an amended complaint within 30 days, Counts I and II shall be dismissed with prejudice.

*Margaret Strickland*
_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE